# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC,<br>    Plaintiff<br><br>            v.<br><br>PERMANENT EASEMENT FOR 1.02 ACRES AND TEMPORARY EASEMENTS FOR 1.65 ACRES IN WEST HEMPFIELD TOWNSHIP, LANCASTER COUNTY, PENNSYLVANIA, TAX PARCEL NUMBER 3000462100000, ADORERS OF THE BLOOD OF CHRIST, UNITED STATES PROVINCE SUCCESSOR BY MERGER TO ADORERS OF THE BLOOD OF CHRIST, PROVINCE OF COLUMBIA, PA, INC. ADORERS OF THE BLOOD OF CHRIST, UNITED STATES REGION, formerly known as SAINT JOSEPH CONVENT MOTHERHOUSE OF THE ADORERS OF THE BLOOD OF CHRIST, COLUMBIA, PENNSYLVANIA, INC., formerly known as SAINT JOSEPH'S CONVENT, MOTHER HOUSE OF SISTER ADORERS OF THE MOST PRECIOUS BLOOD, COLUMBIA, PA, also known as SISTERS ADORERS OF THE MOST PRECIOUS BLOOD, ST. JOSEPH CONVENT, COLUMBIA, PA, and ALL UNKNOWN OWNERS,<br>    Defendants. | : CIVIL ACTION<br>:<br>: No.  5:17-CV-01725-JLS<br>: |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**
**CLAIM FOR COMPENSATION AND TO PRESENT EVIDENCE OF DAMAGES FOR**
<u>**PLAINTIFF'S VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT**</u>

I.  **INTRODUCTION**

Defendant, the Adorers of the Blood of Christ, United States Province ("Adorers") have the statutory right to assert a claim for compensation in the present action against Transco for its past, present, and future violations of the Adorers' rights under the Religious Freedom Restoration Act ("RFRA") that arise out of Transco's condemnation of the Adorers' Property to construct and operate a high-volume natural gas pipeline.  The Natural Gas Act ("NGA") does not permit the Federal Energy Regulatory Commission ("FERC") or a reviewing circuit court to consider or award damages as part of the administrative process in issuing a certificate of public convenience and necessity.  However, this Court has jurisdiction to do so as part of awarding compensation arising out of Transco's condemnation and use of the Adorers' Property.  Therefore, your Honorable Court should grant the Adorers' request to assert a claim for compensation under RFRA and to present testimony and evidence in support thereof.

II.  **STATEMENT OF THE CASE**

The Adorers incorporate the background facts set forth in their accompanying Claim for Compensation as if fully set forth herein.

III.  **QUESTIONS PRESENTED**

   A.  Whether a condemnee may assert a claim for damages for a violation of RFRA as part of a District Court's determination of compensation in a condemnation action where the condemnor's condemnation and use of property substantially burdens the condemnee's exercise of religion?

   *Suggested Answer:* YES

IV.   DISCUSSION

    A.   **RFRA entitles a person whose religious exercise has been substantially burdened in violation of RFRA to obtain appropriate relief against the government or any "other person acting under color of law."**

        1.   **Congressional findings and declaration of purposes (§ 2000bb)**

In adopting RFRA, Congress declared that the free exercise of religion is an "unalienable right" and that "governments should not substantially burden religious exercise without compelling justification." 42 U.S.C. § 2000bb(a)(1), (3). RFRA was a direct legislative response to the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872 (1990), which "virtually eliminated the requirement that the government justify burdens on religious exercise imposed by laws neutral toward religion." 42 U.S.C. § 2000bb(a)(4). "Congress enacted RFRA . . . in order to provide very broad protection for religious liberty." *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2760 (2014). The express purposes of RFRA are: "(1) to restore the compelling interest test set forth in *Sherbert v. Verner* . . . and *Wisconsin v. Yoder*, . . . and to ***guarantee its application in all cases where free exercise of religion is substantially burdened***; and (2) to ***provide a claim or defense to persons whose religious exercise is substantially burdened by government***." 42 U.S.C. § 2000bb(b) (emphasis added).

Further, the Supreme Court has held that RFRA did more than restore the pre-*Smith* compelling-interest test and that, in fact, RFRA provides "even broader protection for religious liberty than was available under those [pre-*Smith*] decisions." *Hobby Lobby*, 134 S. Ct. at 2761 n.3. Congress mandated that the concept of religious exercise in RFRA actions "be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." *Id.* at 2762 & n.5 (quoting §2000cc-3(g) (internal quotation marks omitted)).

3

## 2. Free exercise of religion protected (§ 2000bb-1)

Section 2000bb-1 of RFRA provides, "[i]n general," that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability . . .."

Subsection (b) provides a limited "Exception," stating that "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person is in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest." RFRA places the burden on the Government to establish this exception by demonstrating that its actions satisfy strict scrutiny. *See* 42 U.S.C. § 2000bb-2(3) (definition of "demonstrates").

Congress ensured that "[f]ree exercise of religion [would be] protected" by providing a very specific remedy to aggrieved persons: entitlement to assert a RFRA claim in a judicial proceeding. Under the heading "Judicial relief," the statute specifically provides that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." *Id.* § 2000bb-1(c). Indeed, the provision of judicial relief effectuates RFRA's stated purpose "to provide a claim or a defense to persons whose religious exercise is substantially burdened by government." *Id.*

Importantly, "[t]he plain language of RFRA establishes that a plaintiff may bring claims for 'appropriate relief' against 'persons,' either federal 'officials' or those acting under color of federal law, whose individual conduct substantially burdens one's religious exercise." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 301 (3d Cir. 2016). The Third Circuit has interpreted "appropriate relief" broadly to include not just declaratory and injunctive relief, but also

4

monetary damages. *Id.* at 302-03. Congress also specifically included the right for a person who files a claim under RFRA to recover his or her attorney's fees. 42 U.S.C. § 1988(b).[1]

### 3. Applicability (§ 2000bb-3)

Finally, in Section 2000bb-3, Congress expressly made RFRA applicable "to all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993." *Id.* § 2000bb-3(a). Congress provided a "Rule of Construction" for resolving conflicts with more recently enacted federal laws, stating that "Federal statutory law adopted after November 16, 1993 is subject to this chapter unless such law explicitly excludes such application by reference to this chapter." *Id.* § 2000bb-3(b). "Congress thus obligated itself to *explicitly exempt* later-enacted statutes from RFRA, which is conclusive evidence that RFRA trumps later federal statutes when RFRA has been violated." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1146 (10th Cir. 2013) (emphasis added).

Indeed, "RFRA is structured as a sweeping 'super-statute,' cutting across all other federal statutes (now and future, unless specifically exempted) and modifying their reach. It is 'both a rule of interpretation' and 'an exercise of general legislative supervision over federal agencies, enacted pursuant to each of the federal powers that gives rise to legislation or agencies in the first place.'" *Korte v. Sebelius*, 735 F.3d 654, 673 (7th Cir. 2013) (citation omitted) (emphasis added); *see also S. Nazarene Univ. v. Sebelius*, No. CIV-13-1015-F, 2013 WL 6804265, at *7 (W.D. Okla. Dec. 23, 2013) ("[T]he Religious Freedom Restoration Act of 1993 . . . is a truly extraordinary piece of legislation. By its express terms, RFRA trumps any other federal law

---

[1] Section 1988(b) relevantly provides: "In any action or proceeding to enforce a provision of . . . the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b).

('and the implementation of that law') encroaching upon the broad reach of RFRA, regardless of whether any such law was enacted before or after RFRA was enacted, 'unless such law explicitly excludes' application of RFRA."), *rev'd sub nom. Little Sisters of the Poor v. Burwell*, 794 F.3d 1151 (10th Cir. 2015), *vacated and remanded sub nom. Zubik v. Burwell*, 136 S. Ct. 1557 (2016).

Section 2000bb-3 mandates that the Court apply RFRA over any other federal legislation. The language of RFRA clearly instructs how RFRA interacts with (and overrides) all other statutes, eliminating the need for judicial doctrines for reconciling conflicting statutes. *See Cheffer v. Reno*, 55 F.3d 1517, 1522 n.10 (11th Cir. 1995) (holding that statutory language of RFRA overrides last-in-time doctrine for resolving a conflict between federal legislation).

There is no dispute in the instant case that the NGA is subject to the mandates of RFRA. As the Third Circuit stated, "the NGA would have to necessarily yield to RFRA if the two statutes indeed conflicted." *Adorers of the Blood of Christ v. Fed. Energy Regulatory Comm'n*, 897 F.3d 187, 193 (3d Cir. 2018), *cert. denied sub nom. Adorers of the Blood of Christ, U.S. Province v. F.E.R.C.*, 139 S. Ct. 1169 (2019).

**B.   This Court has jurisdiction to determine the Adorers' claim for damages including RFRA damages.**

As this Court is aware, the Adorers and individual Sisters of the Adorers initiated a related action under RFRA in which they sought equitable relief to enjoin Transco from locating the Pipeline on their Property. *See Adorers*, 897 F.3d 187. This Court and the Third Circuit held that the district court lacked subject matter jurisdiction for injunctive relief because the NGA required the Adorers to have submitted their RFRA claim to FERC and to have followed the NGA's administrative review scheme for challenging a FERC order, whereupon a relevant court of appeals would have "exclusive" jurisdiction to "affirm, modify, or set aside" FERC's order.

Because the NGA granted the Circuit Court authority to "set aside" a Certificate, it could grant relief akin to an injunction issued from a district court. Thus, the Circuit Court had exclusive jurisdiction to issue equitable relief, and the Adorers could not file a separate cause of action with the district court.

The Third Circuit acknowledged, however, that damages for a violation of RFRA present an entirely different analysis because they are not available under the statutory scheme of the NGA. "While RFRA expressly provides for damages, *see* 42 U.S.C. § 2000bb-1, it appears that the NGA circumscribes FERC's authority to issue a ruling on the merits of a certificate of public convenience and necessity, *see* 15 U.S.C. § 717f(e), and the Court of Appeals is similarly limited to "affirming, modifying, or setting aside" the certificate, *id.* § 717r(b)." *Adorers*, 897 F.3d at 198 n.11. "Thus, the ability of a RFRA claimant to receive damages through the NGA process may indeed bear on 'whether the claims can be afforded meaningful review.'" *Id.* (quoting *Thunder Basin Coal v. Reich*, 510 U.S. 200, 207 (1994)). The Adorers, however, had not sought damages because at the time they filed their injunction action, FERC only had granted Transco a conditional certificate, which did not authorize any pipeline construction or natural gas activities on the Adorers' Property until additional permits and approvals were granted. *See City of Fall River, Mass. v. FERC*, 507 F.3d 1, 7 (1st Cir. 2007) (FERC's conditional certificate will have no immediate effects, since it is conditioned on subsequent authorizations and approvals). Likewise, Transco's condemnation of the Adorers' Property merely authorized Transco to possess the easement; Transco needed a notice to proceed from FERC before it could commence any pipeline activities on the Property. *See Twp. of Bordentown, N.J. v. FERC*, 903 F.3d 234, 247 (3d Cir. 2018) ("[T]he activity that FERC's certificate allows to commence—bringing a condemnation action—cannot, without a series of additional steps (among them the prohibited

construction activities), result in" pipeline activity.).

The Third Circuit's statement in footnote 11 suggests that a claim for damages under RFRA would properly reside in the district court. Otherwise, "the statutory scheme 'foreclose[s] all meaningful judicial review,'" *Adorers*, 897 F.3d at 195 (quoting *Thunder Basin*, 510 U.S. at 212), since neither FERC nor the reviewing circuit court can award damages. Moreover, the Third Circuit recognized that to the extent the NGA and RFRA conflicted as it related to the Adorers' right to seek damages under RFRA, "the NGA would have to necessarily yield to RFRA." *Id.* at 193.[2]

Furthermore, where property must be condemned for a natural gas pipeline, the NGA places subject matter jurisdiction over the eminent domain proceeding in the district court where the property is located. 15 U.S.C. § 717f(h). The eminent domain proceeding proceeds in two phases: the condemnation itself and the determination of compensation for the taking. The district court "tries all issues, including compensation." FED. R. CIV. P. 71.1(h)(1).

The Adorers did not waive their ability to obtain damages by not raising a request for damages under RFRA in an answer to Transco's complaint for eminent domain. "[A]t the trial on compensation, a defendant--whether or not it has previously appeared or answered--may present evidence on the amount of compensation to be paid and may share in the award." FED. R. CIV. P. 71.1(e)(3). Indeed, the RFRA damages arose only once the Court granted Transco the right to condemn the Property *and* Transco obtained all necessary permits and approvals to construct and operate the Pipeline.

Moreover, RFRA amends all federal statutes, *Rweyemamu v. Cote*, 520 F.3d 198, 202 (2d

---

[2] Other than the Third Circuit's discussion as set forth above, there does not appear to be any other decisional law from the Federal courts addressing this issue.

Cir. 2008), thereby "qualif[ying] the entire U.S. Code," Michael Stokes Paulsen, *A RFRA Runs Through It: Religious Freedom and the U.S. Code*, 56 Mont. L. Rev. 249, 255 (1995). As one commentary noted, RFRA is "unparalleled in American statutory history" in that, "in one fell swoop, RFRA attaches itself to every [federal] statute, law, ordinance, and rule in the land, as well as those that may be enacted in the future." Eugene Gressman & Angela C. Carmella, *The RFRA Revision of the Free Exercise Clause*, 57 OHIO ST. L.J. 65, 112 (1996); *see* Christian Turner, *Submarine Statutes*, 55 HARV. J. ON LEGIS. 185, 186 (2018) ("New laws, therefore, have meaning only in light of what RFRA also says."). Thus, while the NGA authorizes a district court to award compensation for the condemnation of private property to construct, operate and maintain a pipeline pursuant to "the practice and procedure in similar action or proceeding in the courts of the State where the property is situated," 15 U.S.C. § 717f(h), any state law practice or procedure must be interpreted to have been modified by RFRA (to the extent such provisions would be relied upon to limit relief guaranteed by RFRA).

Presenting evidence on the amount of compensation is exactly what the Adorers now seek to do. RFRA provides a statutory right to obtain all "appropriate relief against a government." 42 U.S.C. § 2000bb-1(c). Under RFRA, "appropriate relief" has been interpreted broadly to include monetary damages. *See Mack*, 839 F.2d at 302-03. Congress also has provided for the recovery of attorneys' fees for RFRA claimants, which is a critical and indispensable component of RFRA and any civil rights legislation. 42 U.S.C. § 1988(b); *see, e.g., Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 559 (2010) (the provision of attorneys' fees in civil rights cases "serves an important public purpose by making it possible for persons without means to bring suit to vindicate their rights"); *Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3d Cir. 1998) (permitting award of attorney's fees in civil rights cases is to "ensure

9

effective access to the judicial process for persons with civil rights claims, and to encourage litigation to enforce the provisions of the civil rights acts and constitutional civil rights provisions").

FERC had no authority to grant any of these types of judicial relief as part of issuing Transco's Certificate. *See* 15 U.S.C. § 717f(e) (setting forth the conditions for granting a certificate of public convenience and necessity and indicating it is either granted or denied). The NGA also limits the relief the circuit courts can enter in reviewing a decision of the Commission to "affirming, modifying or setting aside" the Certificate. *Id.* § 717r(b).

## V.   CONCLUSION

Federal courts are the bulwark against the deprivation of civil rights, and First Amendment rights are among the most precious rights guaranteed under the Constitution. *See Lee v. Weisman*, 505 U.S. 577, 589 (1992). Indeed, RFRA was enacted because "the framers of the Constitution, recognizing free exercise of religion as an unalienable right, secured its protection in the First Amendment to the Constitution." 42 U.S.C. § 2000bb(a)(1). As the Supreme Court made clear in *Hobby Lobby*, "Congress enacted RFRA . . . in order to provide very broad protection for religious liberty." *Hobby Lobby*, 134 S. Ct. at 2760. RFRA must "be construed in favor of a broad protection of religious exercise, to the *maximum extent* permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc-3(g) (emphasis added). It is up to the federal courts to protect this right, and it should clearly and unequivocally do so in this case by allowing the Adorers to present evidence and testimony regarding how Transco's actions have substantially burdened the Adorers' religious exercise in the sacred trust they place on how they use their own land.

For the foregoing reasons, the Adorers respectfully request that your Honorable Court permit the Adorers to assert a claim for compensation and present evidence in support of an award of damages against Transco for its past, current, and future violations of RFRA.

Date:  November 18, 2019

/s/ *J. Dwight Yoder*
J. Dwight Yoder
Sup. Ct. Atty. ID. #81985
Sheila V. O'Rourke
Sup. Ct. Atty. ID. #313842
Attorneys for Appellants
Gibbel Kraybill & Hess LLP
2933 Lititz Pike
P.O. Box 5349
Lancaster, PA  17606
(717) 291-1700

## CERTIFICATE OF SERVICE

I certify that on this date, a true and correct copy of the foregoing document was filed and will be available for viewing and downloading from the ECF system, and served electronically upon each of the persons below, addressed as follows:

Elizabeth U. Witmer, Esquire
John F. Stoviak, Esquire
Sean T. O'Neill, Esquire
Saul Ewing LLP
1200 Liberty Ridge Drive, Suite 200
Wayne, PA  19087-5569

|  |  |
|---|---|
| Date:  November 18, 2019 | /s/ J. Dwight Yoder<br>J. Dwight Yoder, Esquire |