**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PERMANENT EASEMENT FOR 1.02 ACRES AND TEMPORARY EASEMENTS FOR 1.65 ACRES IN WEST HEMPFIELD TOWNSHIP, LANCASTER COUNTY, PA, TAX PARCEL NUMBER 3000462100000, ADORERS OF THE BLOOD OF CHRIST, ET AL.,<br><br>Defendants. | CIVIL ACTION – LAW<br><br>Docket No. 5:17-CV-01725-JLS |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S CLAIM FOR COMPENSATION AND TO PRESENT EVIDENCE OF DAMAGES FOR PLAINTIFF'S ALLEGED VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT**

Plaintiff Transcontinental Gas Pipe Line Company, LLC ("Transco"[1]), by and through its undersigned counsel, submits this Response in Opposition to Defendant Adorers of the Blood of Christ's ("Landowner") Claim for Compensation and to Present Evidence of Damages for Plaintiff's Alleged Violation of the Religious Freedom Restoration Act ("Motion").

## I. INTRODUCTION.

The Fifth Amendment of the United States Constitution guarantees that "just compensation" shall be paid to a landowner when private property is taken for a public use. See U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."). The Third Circuit recently held that the measure of that just compensation for takings under the Natural Gas Act – the authority under which Transco condemned Landowner's

[1] The same definitions used in Transco's Verified Complaint (Dkt. No. 1) are used herein.

Property – must be determined under state law. See Tenn. Gas Pipeline Co., LLC v. Permanent Easement for 7.053 Acres, 931 F.3d 237, 255 (3d Cir. 2019) (holding that Pennsylvania substantive law governs the "standard of measuring just compensation in condemnation proceedings" under the Natural Gas Act). Thus, this Court must determine the just compensation owed to Landowner under Pennsylvania law, which is set forth in the Pennsylvania Eminent Domain Code. See 26 Pa. C.S. §§ 701-716. However, Federal Rule of Civil Procedure 71.1 governs the procedure in this case. See Tenn. Gas, 931 F.3d at 243 (Rule 71.1 "establishes its own procedures applicable to all condemnation cases in federal court").

Under Pennsylvania law, just compensation means "the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected by the condemnation and the fair market value of the property interest remaining immediately after the condemnation and as affected by the condemnation." 26 Pa. C.S. § 702(a); see also Condemnation of Permanent & Temp. Rights of Way for Transportation of Nat. Gas in Buffalo Twp. v. Nat'l Fuel Gas Supply Corp., No. 1093 C.D. 2017, 2018 WL 2945112, at *4 (Pa. Commw. Ct. June 13, 2018). Pennsylvania eminent domain law also only provides for three narrow categories of consequential damages: (1) damages to property abutting the area of an improvement resulting from change of grade of a road or highway; (2) permanent interference with highway access; or (3) injury to surface support. See 26 Pa. C.S. § 714.

**The religious damages Landowner seeks to recover are far outside the scope of what is compensable under the Pennsylvania Eminent Domain Code.** The alleged religious damages have nothing to do with the loss in value of the Property and have nothing to do with the three categories of consequential damages permitted under the Pennsylvania Eminent Domain Code. Thus, Landowner's Religious Freedom Restoration Act ("RFRA") damages

claims are essentially an attempt to graft a counterclaim for damages under a separate federal statute into the compensation phase of this condemnation action; or, in the alternative, an attempt to have this Court recognize the alleged religious damages specific to this Landowner in determining just compensation. However, Federal Rule of Civil Procedure 71.1(e) – which controls procedurally – bars counterclaims, and there are no provisions under the Pennsylvania Eminent Domain Code that provide for damages under RFRA or any other federal statutes.

Landowner also cannot claim that its alleged religious damages bear on the fair market value of the Property before and after the taking. Under Pennsylvania law, fair market value is an objective concept; thus, personal value of a given property to a given landowner is immaterial. See Adelphia Cablevision Assocs. of Radnor, L.P. v. Univ. City Hous. Co., 755 A.2d 703, 713-14 (Pa. Super. Ct. 2000). As the Superior Court of Pennsylvania explained:

> The guiding principle of just compensation under the takings clause of the Fifth Amendment is that the owner of the condemned property "must be made whole but is not entitled to more." In order to satisfy the need for a relatively objective rule concerning just compensation for a taking, the United States Supreme Court has employed the concept of fair market value. "Under this standard, the owner is entitled to receive what a willing buyer would pay in cash to a willing seller at the time of the taking." **Loss to a property owner of "nontransferable values deriving from his unique need for property or *idiosyncratic attachment* to it" is treated as part of the burden of common citizenship, and is not generally compensated**.

Id. (citing and quoting United States v. 564.54 Acres, 441 U.S. 506 (1979) (internal citations omitted)) (emphasis added); see also Frontage, Inc. v. Allegheny Cnty., 162 A.2d 1, 7 (Pa. 1960); United States v. Easements & Rights-Of-Way Over a Total of 15.66 Acres, 315 F. Supp. 3d 1353, 1372 (N.D. Ga. 2018) ("[T]he owner's qualification to testify does not change the market value concept and permit him to substitute a 'value to me' standard for the accepted rule, or to establish a value based entirely upon speculation.") (citation and internal quotations

omitted); United States v. An Easement & Right-of-Way Over 6.09 Acres, 140 F. Supp. 3d 1218, 1243 (N.D. Ala. 2015).

Further, while Landowner may contend that Rule 71.1 is superseded or otherwise nullified by RFRA, this is incorrect, as RFRA and Rule 71.1 do not conflict. Rather, RFRA simply guarantees that claims arising thereunder may be brought "in a judicial proceeding." See 42 U.S.C. § 2000bb-1(c). While Landowner is free to raise its RFRA claim in a different action, this action – which is narrowly circumscribed by Rule 71.1 as well as the Pennsylvania Eminent Domain Code – is not the appropriate forum for the adjudication of that claim.

Alternatively, even if this Court determines as a procedural matter that Landowner may pursue its RFRA claim in this action, the claim is substantively defective and should be dismissed with prejudice. Even if this Court accepts all of the factual allegations pled in Landowner's Motion as true, Landowner's RFRA claim fails as a matter of law for two reasons.

*First*, Landowner cannot show that its religious exercise has been "substantially burdened" by Transco, which is a required element of a *prima facie* case under RFRA. While Landowner claims that it was forced to use its Property to "facilitate the extraction, transportation and use of fossil fuels that will accelerate global warming and cause great harm to the Earth," see Motion ¶ 70, this claim ignores the dispositive fact that Transco – not Landowner – constructed the Project and operates it. Thus, Landowner, which is **not being affirmatively forced to do anything**, is impacted by the Project only in a **passive** sense – a portion of its Property was taken under the power of eminent domain and is being used in a way that is allegedly contrary to Landowner's religious beliefs. However, federal courts have squarely rejected the notion that such passive impacts constitute a "substantial burden" sufficient to sustain a RFRA claim. Accordingly, Landowner's RFRA claim fails as a matter of law.

*Second*, Landowner ignores that RFRA contains an exception that defeats Landowner's claim. RFRA provides that a state actor[2] may substantially burden a person's exercise of religion if it demonstrates that application of the burden to the person (1) is in the furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb-1(b). Here, FERC already decided Transco's interstate Project was in the public interest and approved Transco's proposed route, which intersected Landowner's Property, as minimally disruptive. Because FERC has already made these determinations, Landowner cannot challenge them without mounting a collateral attack on the FERC Order authorizing the Project. Case law is clear that such collateral attacks are inappropriate within the context of a condemnation action. Accordingly, Landowner's RFRA claim fails as a matter of law.

Because Landowner's claim for RFRA damages fails both procedurally and on the merits, it should be dismissed with prejudice. Landowner should also be precluded from offering evidence relating to its RFRA claim at the forthcoming compensation trial in this action.

## II. <u>STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY.</u>

For purposes of this Response only, which argues that Landowner's claim for RFRA damages in this action fails as a matter of law, Transco assumes *arguendo* that the factual allegations set forth in Landowner's Motion are true. Transco reserves the right to challenge Landowner's factual allegations following discovery should this Court permit Landowner to pursue its RFRA claims in this action. For context, Transco offers the following brief summary of Landowner's claims and the procedural history of this action and related litigation that was

---

[2] Transco assumes *arguendo* in this Response that it is a "state actor" subject to RFRA due to its usage of the power of eminent domain. Transco reserves the right to contest its status as a "state actor" should this Court allow Landowner's RFRA claim to proceed.

docketed in this Court at Adorers of the Blood of Christ v. Federal Energy Regulatory Commission, et al., No. 5:17-cv-3163 (E.D. Pa.).

Landowner is a Christian religious order that purports to ascribe religious significance to the preservation of Earth's natural resources. Motion ¶¶ 1-30. Transco is a natural gas transmission company that condemned certain Rights of Way on Landowner's Property in 2017 in order to construct its federally approved Project. On August 23, 2017, this Court decided that Transco had the substantive right to condemn Landowner's Property under the Natural Gas Act in order to construct, operate, and maintain the Project. See Dkt. Nos. 29, 30. The Project has been constructed and has been operational since October 2018.[3] Accordingly, the only issue left to be decided in this action is the compensation due to Landowner for Transco's taking under the Fifth Amendment to the United States Constitution.

In its Motion, Landowner claims that it is entitled to recover damages under RFRA in this action. Among other things, Landowner alleges that "[s]ince placing the [Project] into service, Transco has substantially burdened the religious exercise of [Landowner] in violation of the protections guaranteed [to Landowner] under RFRA by forcing [Landowner] to use [its] own land, which [it] hold[s] in sacred trust as God's creation, to facilitate the extraction, transportation and use of fossil fuels that will accelerate global warming and cause great harm to the Earth." Motion ¶ 70. Relatedly, Landowner claims that the Project "facilitates harm to the [E]arth for as long as it remains in operation." Id. ¶ 71.

This action is not the first time that Landowner has asserted a claim for relief under RFRA. In Adorers of the Blood of Christ, Landowner filed suit against FERC and Transco

---

[3] See Atlantic Sunrise Project Placed Into Full Service, Williams, https://www.williams.com/2018/10/06/atlantic-sunrise-project-placed-into-full-service/ (Oct. 6, 2018).

seeking declaratory relief as well as an injunction to halt construction of the Project, claiming that the Project violated Landowner's religious beliefs. See 283 F. Supp. 3d 342, 343-44 (E.D. Pa. 2017). This Court dismissed Landowner's action with prejudice, holding that the Court lacked jurisdiction to consider what amounted to a collateral attack on FERC's decision to approve the Project as well as the Project route. See id. at 347. Notably, this Court squarely rejected Landowner's argument that RFRA superseded the jurisdictional provisions of the Natural Gas Act, concluding that the two statutes did not conflict. See id. at 346.

The United States Court of Appeals for the Third Circuit thereafter affirmed this Court's decision, holding:

> **While we agree that the [Natural Gas Act] would have to necessarily yield to RFRA if the two statutes indeed conflicted, we conclude that the two statutes do not conflict.** Rather, the [Natural Gas Act] merely provides for complementary procedural requirements that a claimant must adhere to when exercising their RFRA right to a "judicial proceeding." 42 U.S.C. § 2000bb-1(c).

Adorers of the Blood of Christ v. Fed. Energy Regulatory Comm'n, 897 F.3d 187, 193 (3d Cir. 2018), cert. denied, 139 S. Ct. 1169 (2019) (emphasis added).

## III. ARGUMENT.

### A. Landowner's Claim for RFRA Damages in this Action Is Procedurally Inappropriate.

#### 1. RFRA Damages Are Not Recoverable Under the Pennsylvania Eminent Domain Code.

The compensation owed to Landowner for Transco's taking – the sole issue left to be decided in this action – must be determined under the Pennsylvania Eminent Domain Code. See Tenn. Gas, 931 F.3d at 255. As explained above, under the Pennsylvania Eminent Domain Code, just compensation means the difference in the fair market value of Landowner's Property before and after Transco's taking. See 26 Pa. C.S. § 702(a); see also Condemnation of

Permanent & Temp. Rights of Way, 2018 WL 2945112, at *4. Because fair market value is an objective concept, the personal value of Landowner's Property to Landowner – including the religious significance of the Property to Landowner – has no bearing on the calculation of fair market value. See Adelphia Cablevision, 755 A.2d at 713-14; see also Matter of Larsen, 616 A.2d 529, 598 (Pa. 1992) ("It is . . . unquestionably true that when the government takes by eminent domain for public purposes, compensation for annoyance, consequential expenses, sentimental values, or speculative values is generally not provided."), superseded by constitutional amendment on other grounds, Pa. Const. art. V, § 10(a); Dague v. Com., Dep't of Highways, 211 A.2d 527, 529 (Pa. 1965) ("A property owner is not entitled to recover the sentimental value of his home, but only the market value of the property taken."). Thus, the impact of Transco's taking, if any, on Landowner's religious exercise has no bearing on the fair market value calculation that this Court must perform.

Landowner's alleged RFRA damages are also not recoverable under a consequential damages theory. Pennsylvania eminent domain law only allows for the consideration of consequential damages under certain very limited circumstances. Specifically, Section 714 of the Pennsylvania Eminent Domain Code provides that "[a]ll condemnors . . . shall be liable for damages to property abutting the area of an improvement resulting from change of grade of a road or highway, permanent interference with access or injury to surface support, whether or not any property is taken." 26 Pa. C.S. § 714. Pennsylvania courts have held that consequential damages are strictly limited by the language of Section 714. Benner v. Silvis, 950 A.2d 990, 995 (Pa. Super. Ct. 2008); see also In re Condemnation by the Rockwood Area Sch. Dist., No. 202 C.D. 2009, 2009 WL 9096499, at *4 (Pa. Commw. Ct. Dec. 21, 2009). Here, Landowner's claim for RFRA damages clearly does not fall within any of the three narrow categories of

consequential damages permitted under Section 714 of the Pennsylvania Eminent Domain Code. No other section of the Pennsylvania Eminent Domain Code would encompass Landowner's alleged RFRA damages. See 26 Pa. C.S. §§ 701-716.

Further, Pennsylvania law is clear that where the alleged damage "flows . . . from some tortious act, the injured party must proceed" under a trespass theory, rather than within the context of an eminent domain action. See In re Com., Dep't of Transp., 137 A.3d 666, 670 (Pa. Commw. Ct. 2016) (citation omitted)). Here, any damages arising under RFRA that Landowner has allegedly suffered arose from Transco's alleged interference with Landowner's religious exercise and sound in tort. Such alleged emotional distress damages have no bearing on this *in rem* condemnation proceeding. See Larsen, 616 A.2d at 599 ("Courts have viewed the incidental damages such as loss of business, loss of profits, discomfort, disturbance, inconvenience, or loss of sentimental value in the property taken as the price one must pay for living in a civilized society.") (citation omitted)). Accordingly, Landowner may not pursue its claim for RFRA damages in this action.[4]

---

4 Landowner's claim for RFRA damages also fails on procedural grounds because any alleged damages were sustained well after the taking, after the Project went into operation. Under the Pennsylvania Eminent Domain Code, a condemnee is "entitled to just compensation for the taking, injury or destruction of the condemnee's property." 26 Pa. C.S. § 701. Landowner alleges that the damages it allegedly incurred arose as a result of the Project being placed in service, rather than the condemnation itself. See Motion ¶ 70 ("**Since placing the [Project] into service**, Transco has substantially burdened the religious exercise of [Landowner] . . . . ) (emphasis added). Because Landowner expressly admitted that the operation of the Project caused the alleged damages and the availability of consequential damages is strictly limited under the Pennsylvania Eminent Domain Code, see 26 Pa. C.S. § 714, Landowner's claim for RFRA damages is not cognizable in this condemnation action and should be dismissed.

**2. Landowner's Claim for RFRA Damages Is Functionally Equivalent to a Counterclaim, Which Is Impermissible Pursuant to Federal Rule of Civil Procedure 71.1.**

Because the only issue left to be decided in this action is the compensation due to Landowner under the Pennsylvania Eminent Domain Code and Landowner's alleged RFRA damages are not recoverable under any section of the Pennsylvania Eminent Domain Code, this claim can only be construed as a counterclaim. However, counterclaims are strictly barred under Federal Rule of Civil Procedure 71.1. Accordingly, Landowner's claim for RFRA damages is procedurally inappropriate, and should be dismissed on that basis.

Rule 71.1 of the Federal Rules of Civil Procedure outlines the procedural steps required to condemn land under the Natural Gas Act. The pleading procedure set forth under Rule 71.1 departs from the typical federal civil action in that it limits the defendant's objections and defenses to filing an answer. See Fed. R. Civ. P. 71.1(e). On whether pleadings other than an answer are permitted, the Rule is clear:

> A defendant waives all objections and defenses not stated in its answer. No other pleading or motion asserting an additional objection or defense is allowed. . . .

Fed. R. Civ. P. 71.1(e)(3).

Courts around the country have upheld this limitation on additional pleadings or preliminary motions, holding that Rule 71.1 – and its predecessor, Rule 71A, which contained identical language[5] – was intended to "simplify condemnation proceedings so that the rights of the parties may be determined promptly and with assurance." Gov't of Virgin Islands v. 19.623 Acres, 536 F.2d 566, 569 (3d Cir. 1976); see, e.g., United States v. 1.58 Acres, 523 F. Supp. 120,

---

5 The Advisory Committee states in the comments to Rule 71.1 that, in 2007, former Rule 71A was "redesignated" as Rule 71.1 as part of a "general restyling of the Civil Rules . . . to conform to the designations used for all other rules added with the original numbering system." Fed. R. Civ. P. 71.1 (p. 286) (2008 Revised).

122 (D. Mass. 1981) (dismissing counterclaim and request for declaratory relief because the only pleading permitted in response to a complaint in condemnation is an answer); see also Maun v. United States, 347 F.2d 970, 973 (9th Cir. 1965) (upholding district court's order striking motions to dismiss and motions for summary judgment filed in objection to condemnation action because "the only response which a defendant may make to a complaint in condemnation filed in a district court is an answer"), superseded by statute on other grounds, Pub. L. No. 89-135, 79 Stat. 551, as recognized in Boeing Co. v. Movassaghi, 768 F.3d 832, 841 (9th Cir. 2014); Atl. Seaboard Corp. v. Van Sterkenburg, 318 F.2d 455, 458 (4th Cir. 1963) (dismissing defendants' motions to dismiss and for summary judgment because "[t]he Rule's prohibition of any pleading other than an answer is clear and unequivocal"); Columbia Gas Transmission, LLC v. 370.393 Acres, No. 1:14-0469-RDB, 2014 WL 2919709, at *1 (D. Md. June 26, 2014) (denying defendants' motions for a more definite statement as improper under Rule 71.1 because "no other pleading or motion asserting an additional objection or defense is allowed") (quoting Fed. R. Civ. P. 71.1(e)(3)); United States v. 687.30 Acres, 319 F. Supp. 128, 130-31 (D. Neb. 1970) (striking the defendant's amended answer and cross-petition because Rule 71A "is mandatory in form and does not permit the filing of a supplemental pleading").

Because Landowner's claim for damages under RFRA can only be construed as a counterclaim that is barred under Rule 71.1(e), Landowner should be precluded from seeking such damages in this action, and Landowner's Motion should be denied.

**3. RFRA Does Not Supersede or Alter the Clear Language of Rule 71.1.**

Transco anticipates that Landowner will argue in reply that Rule 71.1(e)'s bar on counterclaims is superseded by RFRA, as Landowner's Motion contains certain judicial characterizations of RFRA as a "superstatute." Thus, Landowner will likely argue that RFRA

simply trumps Rule 71.1, such that Landowner may assert a RFRA claim irrespective of the limitations set forth in Rule 71.1 and the policy rationales underlying those limitations.

Landowner, however, fundamentally misreads RFRA. While RFRA has a wide-reaching effect, it only supersedes other federal laws[6] when those laws **conflict** with RFRA's guarantees. See Adorers of the Blood of Christ, 897 F.3d 187 at 193 (explaining that while the "[Natural Gas Act] would have to necessarily yield to RFRA if the two statutes indeed conflicted," the two statutes did not conflict); Luz v. F.C.C., 88 F. Supp. 2d 372, 376 (E.D. Pa. 1999), aff'd sub nom. Radio Luz v. F.C.C., 213 F.3d 629 (3d Cir. 2000) (explaining that where jurisdictional statute "[did] not undermine" RFRA, RFRA did not supersede jurisdictional statute).

Here, RFRA and Rule 71.1 do not conflict. RFRA provides as follows:

> A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense ***in a judicial proceeding*** and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.

42 U.S.C. § 2000bb-1(c) (emphasis added). Importantly, Rule 71.1 does not categorically preclude Landowner from asserting a RFRA claim in any context. Instead, Rule 71.1 merely bars Landowner from asserting a RFRA counterclaim **in this condemnation action**. Id.[7]

---

6 Case law is clear that the Federal Rules of Civil Procedure have the force of law and are binding upon the federal courts to the same extent as congressionally enacted statutes. See, e.g., U.S. ex rel. Roby v. Boeing Co., 189 F.R.D. 512, 516 (S.D. Ohio 1999) (citing Sibbach v. Wilson & Co., 312 U.S. 1, 13 (1941)).

7 Under statutory construction principles, this Court should read RFRA and Rule 71.1 so as to give effect to each if it can do so while preserving their sense and purpose. See Manno v. Am. Gen. Fin. Co., 439 F. Supp. 2d 418, 424 (E.D. Pa. 2006) (explaining that "statutes that appear to conflict must be read, if possible, to give effect to each"). As explained above, the provisions of RFRA and Rule 71.1 can – and should – be read in harmony.

This Court's prior decision in Adorers of the Blood of Christ, 283 F. Supp. 3d at 342, is highly relevant. In that case, Landowner claimed that RFRA superseded the Natural Gas Act's jurisdictional provisions and empowered this Court to hear an action over which it otherwise lacked jurisdiction. This Court rejected Landowner's argument, holding that "[n]o matter how sweeping RFRA may be, plaintiffs simply may not bypass the specific procedure established by Congress in the NGA by bringing a RFRA suit against FERC in this Court". Id. at 347.

Here, the Supreme Court promulgated Rule 71.1 to provide a streamlined procedure for the litigation of federal eminent domain actions. RFRA's breadth does not nullify that procedure. Thus, this Court should hold that Rule 71.1 controls procedurally, dismiss Landowner's claim for RFRA damages, and preclude Landowner from offering evidence relating to its alleged religious exercise damages at the forthcoming compensation trial.

### B. Alternatively, Landowner's Claim for RFRA Damages Fails on the Merits as a Matter of Law and Should Be Dismissed with Prejudice.

Even if this Court were to reach the substantive merits of Landowner's RFRA claim (as explained above, it should not), it would not find a basis to grant the relief requested by Landowner. Accordingly, in the alternative, should this Court reach the merits of Landowner's claim, it should still be dismissed with prejudice as a matter of law.

#### 1. Even Accepting All of Landowner's Allegations as True, There Has Been No "Substantial Burden" on Landowner's Religious Exercise.

A person who brings a challenge under RFRA bears the burden of proving that: (1) the policy or action implicates her religious exercise; (2) the religious exercise is grounded in a sincerely held religious belief; and (3) the policy or action substantially burdens that exercise. See, e.g., Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers, 239 F. Supp. 3d 77, 88 (D.D.C. 2017), appeal dismissed, No. 17-5043, 2017 WL 4071136 (D.C. Cir. May 15, 2017).

Whether a burden is "substantial" under RFRA "is a question of law, not a question of fact." Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs., 867 F.3d 338, 356 (3d Cir. 2017) (citation omitted). Here, even assuming *arguendo* that Landowner is able to establish facts as to elements (1) and (2) of its RFRA claim,[8] the claim fails because Landowner cannot show that Transco's actions "substantially burden" its religious exercise.

Under RFRA, a "substantial burden" is imposed only when individuals are (1) forced to choose between following the tenets of their religion and receiving a government benefit; or (2) coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions. See id.; Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1069-70 (9th Cir. 2008). Here, Landowner does not allege that Transco forced Landowner to choose between following the tenets of its religion or receiving a government benefit. Instead, Landowner attempts to shoehorn its claim into a "coercion" theory, claiming that Transco "forc[ed] Landowner to use their own land, which [it] hold[s] in sacred trust as God's creation, to facilitate the extraction, transportation and use of fossil fuels that will accelerate global warming and cause great harm to the Earth." See Motion at ¶ 70.

Landowner's "coercion" theory fails a matter of law because Landowner was not forced to use its own land in a way that violated its religious beliefs, as it was not forced to construct or operate the Project. See Adorers of the Blood of Christ, 897 F.3d at 189-90 (noting that Transco was authorized to construct the Project by FERC). Indeed, Landowner's RFRA liability theory – that it suffered cognizable damages because its land was taken and used in a way that it objected

---

8 Transco is unconvinced that Landowner will ultimately be successful in establishing such facts, but Transco acknowledges that challenging these elements at the present stage of this litigation is premature, particularly where it is clear that Landowner's religious exercise has not been "substantially burdened" as a matter of law.

to on religious grounds – has been rejected by other courts, including the Supreme Court, in analogous contexts.

Most recently, in Standing Rock, 239 F. Supp. 3d at 77, the court rejected a similar argument by a Native American tribe that an easement for an oil pipeline company across the tribe's property violated the tribe's religious belief in the sacredness of the tribe's land and gave rise to liability under RFRA. See id. at 91 ("The government action here – *i.e.*, granting the easement to Dakota Access and thereby enabling the flow of oil beneath Lake Oahe – does not impose a sanction on the Tribe's members for exercising their religious beliefs, nor does it pressure them to choose between religious exercise and the receipt of government benefits."); see also Navajo Nation, 535 F.3d at 1070 ("The use of recycled wastewater to make artificial snow also does not coerce the [p]laintiffs to act contrary to their religion under the threat of civil or criminal sanctions . . . .").

Both Standing Rock and Navajo Nation relied heavily on the Supreme Court's decision in Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439 (1988). See Standing Rock, 239 F. Supp. 3d at 91-92; Navajo Nation, 535 F.3d at 1071-72. Although Lyng involved a First Amendment free exercise challenge rather than a RFRA challenge, the Supreme Court's analysis of what constitutes a "substantial burden" on religious exercise has been held to apply to the RFRA context. See Standing Rock, 239 F. Supp. 3d at 93; Navajo Nation, 535 F.3d at 1073.

In Lyng, the plaintiffs challenged the United States Forest Service's decision to build a six-mile segment of paved road and permit significant timber harvesting in a government-owned area considered sacred by several tribes. Lyng, 485 U.S. at 442-43. Specifically, the plaintiffs contended that the "disruption of the natural environment caused by the . . . road [would] diminish the sacredness of the area in question" and interfere with tribal members' use of sites

there for religious practice. Id. at 448. The Supreme Court acknowledged that the Forest Service's decisions "would interfere significantly with private persons' ability to pursue spiritual fulfillment according to their own religious beliefs," but concluded that the government's actions did not cause the kind of harm cognizable under the Free Exercise Clause because they did not "coerce[ ]" the affected individuals "into violating their religious beliefs" or "penalize religious activity by denying any person an equal share of the rights, benefits, and privileges enjoyed by other citizens." Id. at 449. Instead, the Court explained, the harms at issue were "incidental effects of government programs, which may make it more difficult to practice certain religions but which **have no tendency to coerce individuals into acting contrary to their religious beliefs** . . . ." Id. at 450 (emphasis added).

Lyng controls here, just as it controlled in Standing Rock and Navajo Nation. Landowner has not been coerced into violating its religious beliefs because it did not construct the Project and does not operate the Project. Instead, Landowner's alleged RFRA damages stem from the incidental effects of the Project. Such incidental effects, however, do not constitute a "substantial burden" on Landowner's religious exercise as a matter of law. See Lyng, 485 U.S. at 450. For this reason, Landowner's claim for RFRA damages fails on the merits and should be dismissed with prejudice.

**2. The Construction of the Project on Landowner's Property Was the Least Restrictive Means of Furthering a Compelling Government Interest and Any Argument to the Contrary Constitutes an Impermissible Collateral Attack on the FERC Order.**

Landowner's RFRA claim also fails on the merits as a matter of law because the Project was constructed – and is being operated – in furtherance of a compelling governmental interest. Additionally, the construction of the Project as approved by FERC was the least restrictive means of promoting that interest.

In enacting RFRA, Congress made clear that exercises of authority that are narrowly tailored to serve the public interest were excepted from the scope of RFRA. Specifically, Congress provided that a state actor "may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person (1) is in the furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b); see also DeHart v. Horn, 390 F.3d 262, 274 (3d Cir. 2004) (explaining that "RFRA included an exception to its blanket rule").

Here, the predicate questions regarding the applicability of RFRA have already been answered by FERC in connection with FERC's issuance of the FERC Order to Transco. Specifically, in issuing the FERC Order, FERC determined that the Project was in the public interest and that the route on which Transco constructed the Project – which included Landowner's Property – was minimally intrusive. See Transcon. Gas Pipe Line Co., LLC v. Permanent Easements for 2.14 Acres & Temp. Easements for 3.59 Acres, 907 F.3d 725, 730 (3d Cir. 2018), cert. denied 139 S. Ct. 2639 (2019) (explaining that FERC concluded that "[b]ased on the benefits" of the Project, "the minimal adverse effects on landowners or surrounding communities," and "the absence of adverse effects on existing customers and other pipelines and their captive customers, . . . that the public convenience and necessity require[d] approval" of the Project "subject to the conditions" set forth in the FERC Order) (citation omitted).

Importantly, courts around the country have found a strong public interest in constructing and operating interstate pipelines. See, e.g., Steckman Ridge GP, LLC v. An Exclusive Nat. Gas Storage Easement, No. 08-168, 2008 WL 4346405, at *17 (W.D. Pa. Sept. 19, 2008) (holding that issuance of the FERC order is evidence that the project is in the public interest); Columbia Gas Transmission Corp. v. An Easement, No. 05 CV 2895, 2006 WL 401850, at *3 (E.D. Pa.

Feb. 16, 2006) (granting immediate possession because interstate pipeline service was in the public interest); see also E. Tenn. Nat. Gas Co. v. Sage, 361 F.3d 808, 830 (4th Cir. 2004); N. Border Pipeline Co. v. 64.111 Acres, 125 F. Supp. 2d 299, 301 (N.D. Ill. 2000).

Here, to overcome RFRA's exception, Landowner would need to prove either that the Project was not, in fact, required by the public interest, or that the Project as constructed was not, in fact, the least restrictive means of furthering the natural gas transmission goals contemplated by the Project. However, as explained above, these questions have already been answered. In challenging FERC's determinations, Landowner would, in effect, be mounting a retrospective collateral attack on the propriety of the Project and the FERC-approved Project route. As the United States Court of Appeals for the Third Circuit has already recognized, Landowner had several opportunities to raise such challenges during the administrative process that preceded the FERC Order, but Landowner neglected to participate in that process. See Adorers of the Blood of Christ, 897 F.3d at 191 (explaining in detail FERC's administrative process and Landowner's failure to participate therein).

Case law is clear that an attack on public use or routing during a condemnation proceeding is an impermissible collateral attack on FERC's decision to authorize the project. See, e.g., Transcon. Gas Pipe Line Co., LLC v. Permanent Easement for 2.59 Acres, No. 4:17-CV-00289, 2017 WL 1105237, at *3 (M.D. Pa. Mar. 24, 2017) ("By issuing the Certificate [of public necessity] to [plaintiff], FERC has determined that the Subject Property is necessary to the operation of the Pipeline; this determination cannot be challenged by [d]efendants.") (citation and internal quotations omitted), aff'd, 709 F. App'x 109 (3d Cir. 2017); USG Pipeline Co. v. 1.74 Acres, 1 F. Supp. 2d 816, 821 (E.D. Tenn. 1998) ("Defendants' challenge to the FERC

Certificate based on whether the contemplated pipeline serves a public purpose or is necessary must be brought to the . . . Court of Appeals.").

In sum, Landowner seeks to relitigate issues regarding the public necessity of the Project and the Project route, but these issues were decided by FERC years ago and have since been affirmed by federal courts. Because the construction and operation of the Project was, and is, squarely in the public interest, Landowner's RFRA claim fails as a matter of law. See 42 U.S.C. § 2000bb-1(b). Accordingly, the claim should be dismissed with prejudice and Landowner should be precluded from offering evidence relating to alleged religious exercise impacts at trial.

## IV. CONCLUSION.

For all of the foregoing reasons, Transco respectfully requests that this Court dismiss Landowner's claim for damages arising under RFRA with prejudice and preclude Landowner from offering evidence relating to its alleged RFRA damages at the forthcoming trial on just compensation.

Respectfully submitted,

**SAUL EWING ARNSTEIN & LEHR LLP**

s/ Elizabeth U. Witmer
Elizabeth U. Witmer, Esq. (55808)
Sean T. O'Neill, Esq. (205595)
Albert F. Moran, Esq. (318683)
1200 Liberty Ridge Drive, Suite 200
Wayne, PA 19087-5569
(610) 251-5062
Elizabeth.Witmer@saul.com
Sean.Oneill@saul.com
Albert.Moran@saul.com

*Attorneys for Plaintiff Transcontinental Gas Pipe Line Company, LLC*

Dated: January 7, 2020

**CERTIFICATE OF SERVICE**

I hereby certify that on January 7, 2020, I caused a true and correct copy of the foregoing *Plaintiff's Response in Opposition to Defendant's Claim for Compensation and to Present Evidence of Damages for Plaintiff's Alleged Violation of the Religious Freedom Restoration Act* and accompanying Proposed Order to be served on the following counsel via the Court's electronic filing system:

J. Dwight Yoder, Esq.
Sheila V. O'Rourke, Esq.
Gibbel Kraybill & Hess LLP
2933 Lititz Pike, P.O. Box 5349
Lancaster, PA 17606

*Attorneys for Defendant*

s/ Elizabeth U. Witmer
Elizabeth U. Witmer, Esquire

Dated: January 7, 2020